UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,       )
                                )
              Plaintiff,         )
                                )
v.                              )        No.:   3:20-CR-94-TAV-HBG-1
                                )
RONNIE MILLS,                   )
                                )
              Defendant.         )

## MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge H. Bruce Guyton on October 8, 2021 [Doc. 60].  The R&R addresses defendant's Motion to Suppress [Doc. 34].  The government responded [Doc. 37], and Judge Guyton held hearings on the motion on July 16, 2021, August 3, 2021, and August 10, 2021 [Doc. 41, 47, 51].  After the hearings, defendant filed a post-hearing brief [Doc. 53], and the government responded [Doc. 54].  Judge Guyton then issued the R&R [Doc. 60], recommending that the Court deny defendant's motion to suppress.  Defendant has filed objections to the R&R [Doc. 61], the government has responded [Doc. 64], and the matter is now ripe for the Court's review.  *See* E.D. Tenn. L.R. 7.1(a).  For the reasons that follow, the Court will **OVERRULE** defendant's objections [Doc. 61], **ACCEPT IN WHOLE** the R&R [Doc. 60], and **DENY** defendant's Motion to Suppress [Doc. 34].

## I.  Background

The Court presumes familiarity with the facts of this case and will only recite facts necessary to the determination of the instant motion.  The following facts contained in the R&R are unopposed, and therefore, the Court adopts those facts.  However, where facts are disputed, the Court so notes.

Defendant was released on parole on January 25, 2018 [Doc. 60, p. 22].  At that time, defendant signed and agreed to conditions of parole, including a search condition that permitted a search of his residence without reasonable suspicion [*Id.* at 22–23].  Defendant was supervised by Tennessee Department of Corrections Parole Officer Steve Melhorn, who approved defendant living in a trailer at 153 Peacock Road, with his wife, Karin Mills [*Id.* at 23].  On April 1, 2019, defendant informed Officer Melhorn that he was staying across the street in a camper, because he and his wife were having marital problems.  On his monthly report for April 1, 2019, defendant listed his address as 158 Peacock Road [*Id.*].  According to Officer Melhorn, on April 5, 2019, he went to 153 Peacock Road to have defendant sign a form, and defendant, who was sitting on the front porch of the trailer, informed him that he and his wife had reconciled, and he had returned home [*Id.* at 5].  However, defendant testified that he "did not recall" telling Officer Melhorn that he and his wife had reconciled and that he was back in the trailer at 153 Peacock Road [*Id.* at 19], and now denies telling Officer Melhorn such [Doc. 61, p. 2].

In September 2019, Officer Melhorn received a call from Morgan County Sheriff's Office ("MCSO") Deputy Keith Hawkins, inquiring as to whether Officer Melhorn was

still supervising defendant and indicating that he had reports that defendant and his son were involved in trafficking methamphetamine [Doc. 60, p. 23]. Deputy Hawkins wanted to search defendant's residence for public safety. Officer Melhorn consulted with his supervisor, who approved a search of defendant's residence pursuant to defendant's parole conditions [*Id.*].

On the morning of September 27, 2019, Officer Melhorn, Deputy Hawkins, and MCSO Deputy Caleb Pemberton went to 153 Peacock Road [*Id.*]. Officer Melhorn knocked on the door, and defendant answered the door wearing a t-shirt and boxer shorts. Officer Melhorn introduced the other officers and said that they were there to conduct a parole compliance search [*Id.*]. Although the R&R contains no specific findings of fact as to this matter, Officer Melhorn testified that he did not tell defendant that the failure to allow the officers inside would be a violation of his parole [*Id.* at 7]. Defendant disputes the accuracy of this testimony and contends that Officer Melhorn testified at the preliminary hearing in state court that he explained to defendant that if he refused the search it would be grounds for an automatic warrant [Doc. 61, pp. 3–4]. Officer Melhorn testified that defendant invited the officers inside [*Id.* at 5–6], and it does not appear that defendant offered any testimony on this matter, but he now disputes whether he voluntarily allowed the officers inside [Doc. 61, p. 3]. Once inside, one of the officers asked if anyone else was present at the trailer and defendant stated that his wife was there in the bedroom [Doc. 60, p. 23]. Mrs. Mills was asked to come to the living room [*Id.*].

Officer Melhorn testified that Deputy Hawkins asked defendant where he slept, and defendant pointed to the bedroom and then walked into the bedroom with Deputy Hawkins [*Id.* at 7]. Deputy Hawkins likewise testified that he asked defendant where the bedroom was, and defendant pointed to the bedroom, said "that's my room," and walked into the bedroom with him [*Id.* at 12]. Although it does not appear that defendant provided specific testimony as to this issue at the suppression hearing, he now contends that the bedroom he led officers into was not his own bedroom, but his wife's bedroom [Doc. 61, p. 4].

Deputy Hawkins began searching the bedroom and found one or two oxycontin pills [Doc. 60, p. 24]. Deputy Hawkins asked defendant if the pills were prescribed to him [*Id.*]. Deputy Hawkins testified that defendant informed him that the pills were not prescribed to him, and he purchased the pills at the Sunbright football game [*Id.* at 10]. Defendant, however, testified that he told the officers that he thought his son bought the oxycontin pills at a football game [*Id.* at 20] and denies stating that he bought the oxycontin at a football game [Doc. 61, p. 4]. Deputy Hawkins also found several prescriptions bottles of gabapentin in the bedroom, which belonged to defendant and for which he had a prescription [*Id.* at 24]. In addition to defendant's medication, Deputy Hawkins saw defendant's clothing, wallet, and legal paperwork in the bedroom [*Id.*].

While Deputy Hawkins searched the bedroom, Deputy Pemberton searched the living room and kitchen, and Officer Melhorn sat with Mrs. Mills in the living room [*Id.*]. At some point, defendant joined Officer Melhorn and Mrs. Mills in the living room. Deputy Pemberton found digital scales with what appeared to be methamphetamine residue

in the kitchen beside some plastic baggies. Deputy Pemberton alerted Deputy Hawkins to the scales and baggies. Deputy Hawkins asked defendant if there was methamphetamine in the trailer and told defendant that he would not leave until he was sure no methamphetamine was there. Deputy Hawkins talked to Deputy Pemberton about calling a drug detection dog to the trailer [*Id.*].

Defendant told Deputy Hawkins that he would help locate the methamphetamine and called his son, Ronnie Mills, Jr. [*Id.*]. After talking with his son, defendant said that he would give the officers what they were seeking, and either pointed to, handed, or tossed a black backpack from the front porch to Deputy Hawkins. Deputy Hawkins searched the backpack, which contained methamphetamine and a pistol. Following the discovery of the backpack, Deputy Hawkins searched the bathroom while defendant sat in the living room [*Id.*].

After completing the search of the trailer, Deputy Hawkins arrested defendant, who was placed in handcuffs [*Id.* at 25]. Defendant offered to cooperate with Deputy Hawkins. MCSO Deputy Luke Cooper transported defendant to the MCSO. There, Deputy Hawkins advised defendant of his *Miranda* warnings, and defendant signed a written rights waiver. Defendant then gave a statement to Deputy Hawkins, admitting his involvement in methamphetamine trafficking [*Id.*].

## II. Standard of Review

The Court generally reviews *de novo* those portions of the R&R to which the defendant has objected. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Accordingly, the

Court considers the R&R, the motion to suppress, the parties' underlying and supporting briefs, the defendant's objections, and the government's response to those objections, all in light of the applicable law.

## III. Analysis

Defendant raises two objections to the magistrate judge's R&R. Specifically, he objects to the magistrate judge's findings that: (1) defendant was not "in custody" during the questioning that occurred during the search of the trailer; and (2) defendant, as a parolee, was subject to a search condition [Doc. 61, pp. 6–8]. The government responds that defendant's objections add nothing new to the previous briefs filed and are unsupported by fact or law [Doc. 64, p. 1].

Objections to a magistrate judge's R&R must be clear enough to enable the Court to discern the issues that are dispositive and contentious. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 508–09 (6th Cir. 1991)). "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins*, 7 F. App'x 354, 356 (6th Cir. 2001).

"A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An 'objection' that does nothing more than state a disagreement with a magistrate judge's suggested resolution, or simply summarizes what has been presented before, is not an 'objection[.]'" *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004). If

6

"objections merely restate the arguments asserted in [a party's] earlier motion, which were addressed by the magistrate judge's report and recommendation, the Court may deem those objections waived." *Modrall v. U.S. Dep't of Educ.*, No. 1:19-cv-250, 2020 WL 2732399, at *2 (E.D. Tenn. May 26, 2020) (citing *VanDiver v. Martin*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004)).

The Court finds that defendant's objections are conclusory objections that lack the specificity necessary to alert the Court as to the portions of the magistrate judge's R&R alleged to be in error.

As to his first objection, regarding whether he was "in custody" during questioning, defendant quotes the R&R, states that the facts found by the magistrate judge support a finding that he was in custody, and attempts to incorporate his prior arguments on the matter [Doc. 61, p. 6 and n.3]. Defendant then adds that any reasonable person would feel that they were in custody once contraband was discovered [*Id.* at 6], an assertion that he raised in his post-hearing brief [*See* Doc. 53, pp. 2–3]. Defendant states that "[n]either the Magistrate Judge nor the government cites caselaw to support a finding that suspects are free to leave once contraband is discovered by law enforcement" [Doc. 61, p. 7]. Defendant then argues that his actions in either pointing to the bag or throwing the bag to an officer was a nonverbal statement that should be suppressed [*Id.*], which appears to be identical to language contained in defendant's post-hearing brief [*See* Doc. 53, p. 4].

As to his second objection, defendant reiterates his argument that Deputy Hawkins utilized Officer Melhorn as a stalking horse for an investigator search, and there was no

evidence to support a reasonable suspicion that he was engaging in illegal activity at 153 Peacock Road [Doc. 61, p. 8]. Defendant also reiterates his argument that Officer Melhorn did not have a right to search 153 Peacock Road because that was not defendant's residence [*Id.*]. Both of these arguments are simplistic restatements of the more detailed arguments defendant presented in his post-hearing brief [Doc. 53, pp. 5–6]. Defendant then states that he incorporates all of his prior arguments in his objection [Doc. 61, p. 8].

Defendant's objections are thus largely restatements of his prior arguments without reference to the magistrate judge's rationale for his recommendation. The only specific reference to the magistrate judge's analysis is defendant's claim that the magistrate judge cited no case law for the proposition that a suspect is free to leave the scene of a search after contraband is discovered [Doc. 61, p. 7]. But the ultimate inquiry as to whether defendant was "in custody" turns not on whether defendant was legally free to leave, but whether a reasonable person in defendant's position would have believed that he was free to leave. *See United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003). And the magistrate judge cited case law setting forth the factors to be considered in this analysis, and then addressed those factors' applicability in this instant case [Doc. 60, pp. 34–35]. Accordingly, even if this single sentence from defendant's objections contains enough specificity, the Court nonetheless finds that the magistrate judge correctly analyzed the relevant factors in determining that defendant was not "in custody" at the time of questioning. For these reason's defendant's objections are **OVERRULED**.

8

## IV.    Conclusion

Accordingly, defendant's objections [Doc. 61] are **OVERRULED** as vague and conclusory.  The Court **ACCEPTS IN WHOLE** the R&R [Doc. 60], and hereby **DENIES** defendant's Motion to Suppress [Doc. 34].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE